BARNS, PAUL D., Associate Judge.
On January 10, 1966, an Information was filed against the Appellant-Williams and Joseph R. Dumond, charging both with the crime of robbery on January 7, 1966. At trial to a jury on pleas of not guilty, Dumond was acquitted and Appellant-Defendant-Williams was found guilty and sentenced. Williams appealed, and we affirm.
As stated by the appellant’s attorney, the evidentiary facts show: Thaf a masked gunman went to the Coach House Ha.rbor Restaurant located in Pompano Beach, Florida, and there held at gunpoint, Benjamin Cooper, who was the manager of the establishmént, and Eva Reitz, a cashier. Taken from the cash register and given to the masked gunman was - a large sum of money. The masked gunman was identified as the co-defendant, Joseph R. Du-mond. A busboy, an employee of the Coach House Harbor, happened to see what was occurring and exited the building on the east side, came into the parking lot and there saw a white Chevrolet with a man behind the wheel. While in the parking lot, the employee of the Coach House Harbor saw the masked gunman run across the restaurant and head toward this four-door white Chevrolet, which was occupied by a single male behind the wheel. He, the employee, immediately went back into the Coach House Harbor, went through the building and upon instructions from Mr. Cooper, exited from the building at the west end, ran out into the road in time to see the Chevrolet making a turn to the *637 south on Federal Highway. The Pompano Beach Police Department was immediately notified.
Approximately five minutes to ten minutes after the robbery of the Coach House Harbor, a member of the Pompano Beach Police Department saw a four-door white Chevrolet proceeding in a westerly direction on Atlantic Boulevard which vehicle met the description of the one that was supposed to have been seen leaving the Coach House Harbor with two occupants. The police unit, with one officer driving and one officer a passenger, made a u-turn on Atlantic Boulevard and gave pursuit of the automobile which accelerated at a fast rate of speed, went west on Atlantic Boulevard to Sixth Avenue, turned south and ran into a dead-end. At the dead-end, the person in the passenger’s seat of the automobile alighted from the automobile, ran into the bushes and was not captured. The appellant was apprehended behind the wheel of the automobile. The officers also testified as they turned from Atlantic Boulevard into Sixth Avenue that they saw thrown from the automobile some items which were later recovered by members of the Pompano Beach Police Department and were described as having come from the robbery at the Coach House Harbor Restaurant.
On behalf of the co-defendant, Joseph R. Dumond, there were numerous witnesses offered as an alibi placing Mr. Dumond at some place other than .in the Pompano Beach area at the time it is alleged that Mr. Dumond is supposed to have committed this robbery with Mr. Williams. On each and every occasion that a witness for Mr. Dumond took the stand, counsel for the Appellant-Williams made a statement that that person was not being called as a witness for Mr. Williams, which the court recognized.
It is to be noted here that none of the witnesses called to testify in behalf of the co-defendant, Dumond, in any way gave any help or aid to the Appellant-Williams in the defense of his case.
Jessie Williams, the appellant herein, did not take the stand to testify in his own defense and offered no testimony of any kind to the court and the jury.
Appellant’s brief is addressed to the following assignment of error predicated on the quoted matter under the circumstances as stated, viz.:
“6. The court committed error in denying defense counsel’s Motion for Mistrial :
“ * * *
“(b) During closing argument when Mr. Balsiger, the Prosecutor, made reference on three separate occasions of Defendant, WILLIAMS’ failure to testify and take the stand in his own behalf.”
At the conclusion of the entire case and at the time the respective attorneys made their closing arguments, counsel for the appellant waived his opening argument. By doing this, the order then of argument was: Mr. Balsiger, the prosecutor, first; Mr. Seidel, the Defendant-Dumond’s lawyer, would be next. Mr. Balsiger would then have an opportunity of answering Mr. Seidel; and then counsel for the appellant herein would have final argument.
During the closing arguments for the state, Mr. Balsiger, the prosecutor, made the following argument to the jury:
“MR. BALSIGER: * * * Gentlemen, let me briefly just explain the order which the counsel will talk with you. When a defendant puts on no evidence or no testimony other than perhaps his own, he is entitled to the opening and closing arguments. If the defendant does in fact put on evidence or testimony other than himself, he is entitled, the State is entitled to opening and closing.
“Here we have the combination of both situations and for this reason I will have the opening statement so far as Joe Du-mond is concerned and the closing statement as far as Joe Dumond is concerned, the defense counsel for Jessie Williams *638 having put on no testimony or evidence is entitled to opening statement for Jessie Williams and of course closing statement for Jessie Williams and I will be sandwiched in between.” (R 271, 272— Emphasis added.)
Again, the prosecutor made the following comment:
“MR. BALSIGER: First of all, it has never been questioned that this robbery did occur on January 7th. Therefore, this stand uncontested, this stands as proved. * * * ” (R 274)
“ * * * I think it will be a question of fact, was Cooper robbed, and was the money taken and you heard the testimony to the fact that somewhere in excess of $1600 was taken. This was never controverted in any way.” (R 275)
And lastly:
“MR. BALSIGER: * * * We saw how the defendant Jessie Williams as a practical matter, was flatly caught red-handed. He did not get away. He was the unlucky one in this group.
“Now I am not sure just how they are going to supply the fact that he was driving the car, that all this stuff came out of these innocent men. * * * ” (R 320)
Appellant argues that the argument and comments by counsel for the state is proscribed by Chapter 918.09, Florida Statutes, F.S.A., which provided, in part, as follows :
“ * * * [B]ut no accused person shall be compelled to give testimony against himself, nor shall any prosecuting attorney be permitted before the jury or court to comment on the failure of the accused to testify in his own behalf * * *."
and cites Flaherty v. State, Fla.App.1966, 183 So.2d 607, in support of error. As in the case at bar, there was no testimony in behalf of the defendant in the Flaherty case, and the court in reversing held:
“A comment made by a prosecuting attorney, directly or indirectly, which is subject to interpretation by a jury as a comment upon failure of a defendant to testify has been strictly regarded as an impingement on the substantial right of the defendant secured by section 918.09, Florida Statutes, F.S.A. This is so, regardless of the character of the comment, the motive or intent of the prosecutor or whether or not it was innocently or inadvertently spoken, and notwithstanding that the comment is susceptible of a different construction. * * * ”
However, in that case the testimony showed that fingerprints taken from a large spoon found at the place of crime corresponded to those of the defendant, and the appellate court reversed the conviction because the prosecution argued to the jury that:
“ ‘Mr. Stahl [defendant’s attorney] hasn’t argued that possibly he was in there some time during the day and he got his fingerprints on the spoon when he was eating some soup or in some other way, which is a possible out to this thing.’ ”
basing its reversal upon the violation of Section 918.09, supra.
In Trafficante v. State, Fla.1957, 92 So.2d 811, the defendants failed to testify in their own behalf; and after their conviction, the Supreme Court reversed because in the final argument to the jury the state attorney argued:
“ ‘ * * * All right. The testimony here is uncontradicted, uncontradicted, by these two Trafficantes, this was said in the car. They were both there, is there anyone, is there any statement here in evidence that either one of them contradicted, regardless of who said it? They have their right * * *.’ ”
the court holding such argument to be proscribed by Section 918.09, supra.
In Singleton v. State, Fla.App.1966, 183 So.2d 245, the appellant-defendant at trial *639 elected not to testify or offer any testimony in her own behalf. On appeal, her conviction was reversed for violation of Section 918.09, supra, when the prosecuting attorney argued to the jury:
“ ‘And I call your attention to the manner in which the defendants have testified in refuting their (the State’s witnesses) testimony.’
“After the State rested its case in chief, defendant Grace Marie Singleton elected to not take the witness stand, nor did she offer any testimony otherwise in her own behalf. Her co-defendant, Malcolm Ray Singleton, testified briefly ‘as a witness in his own behalf.’ After the objectionable remarks had been made to the jury by the prosecuting attorney, as herein-before quoted, counsel for the defendant immediately objected to such statement, which objection was overruled by the Court; the Court was then requested to instruct the jury to disregard the statement, which request was overruled; and counsel then moved for a mistrial based upon said statement, which motion was denied.” (Emphasis added.)
In Way v. State, Fla.1953, 67 So.2d 321, the appellant-defendant elected not to testify or offer any evidence in support of her defense, and on appeal her conviction was reversed for violation of Section 918.-09, supra, because the prosecuting attorney argued to the jury that the defendant’s attorney made no explanation of his defense, viz.’, “ ‘ * * * Mr. Warfield gave no explanation of his defense — ’ ”, and after referring to the state’s evidence argued that it was “ ‘unexplained’ ” by the defendant and that “ ‘[tjhere is no denial of it. There is no conflict.’ ”
The Trafficante case involved violation of the bribery laws, and the court in considering the state attorney’s remarks to the jury above quoted stated:
“ * * * Upon the whole record, however, we believe that the average juror would have considered the prosecutor’s remarks at least as an indirect reference to the fact that appellants did not take the witness stand in their defense. Before making the statement we have quoted, the prosecutor had reviewed the evidence, and the most obvious construction of the quoted remarks would be that appellants had contradicted none of this evidence, although, by testifying, they would have had a right to do so. It is significant that the construction urged by the State is presented here for the first time, and the record is innocent of any similar explanation by the State Attorney in answer to appellants’ objections and motions for a mistrial. We conclude that the jury would have adopted the construction contended for by appellants.”
In the case at bar, it is clear that the prosecutor addressed his remarks to the evidence adduced and it would be a strained construction to conclude that his remarks were a “comment on the failure of the accused to testify in his own behalf”. The defendant’s counsel had waived his right to the opening argument to the jury and the prosecutor had no right to make a reply to the argument of counsel for the defendant, but he had the right to argue the evidence. Clinton v. State, 1908, 56 Fla. 57, 47 So. 389 (per Justice Cockrell) states:
“ * * * The state still has the right to direct the attention of the jury to that portion of the evidence as to which there is conflict, and to that portion which is without conflict. Testimony may in a sense be contradicted in various ways, as by inherent improbability, by cross-examination or by the demeanor of the testifier. So long as the state does not exercise its pre-existing right, so as to make it directly or covertly a comment upon the failure of the accused to voluntarily become a witness, the law is not violated. * * * ”
We find that the case at bar is not within the scope of the proscriptions of the *640 statute above quoted from or the holding in the Flaherty case, and
Affirm.
WALDEN, C. J., concurs.
CROSS, J., dissents, with opinion.